UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES,

      Plaintiffs,

                                                            Case No. 4:04-cv-147

v.

                                                            Hon. Gordon J. Quist

F. HOGLE, R. PERTEET, P. JENSEN,
J. WOHLFERT, S. PETTIT, T. TKACH,
E. SIMON, C. COWLEY,
M. RICHARDSON, M. THOMAS,
UNKNOWN MAHALIC,
UNKNOWN LAFLER, and
"JOHN DOE #1-10",

      Defendants.
_____/

REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on the motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(6) filed by defendants Richardson, Thomas, Lafler, Hogle, Perteet, Jensen, Wohlfert, Pettit and Simon (docket no. 26) and a motion to dismiss filed by defendant Mahalic (docket no. 48).[1]

          **I.**    **Plaintiff's complaint**

Plaintiff sets forth the following allegations in his complaint:

On 4-26-03, Fred Hogle and R. Perteet placed me into restraints took me to the day room and shredded some of my legal documents while threatening me that if I did not stop lawsuits using staff social security numbers in my kites I would be killed. Officers John Doe # 1-10 were also present. I was then told by Hogle that until I dropped the lawsuit and give up the social security numbers I would stay in restraints. Out of retaliation and in order to justify keeping me in restraints c/o's

---

[1] Defendants Tkach and Cowley have not been served with a summons in this matter.

> Jensen, Wohlfert, Pettit, Tkach, Simon, Crowley, Mahalic, Richardson and Lafler wrote false retaliatory misconducts. When I spoke to Sgt. Thomas about coming out of restraints he told me if I was not ready to stop filing lawsuit he could not take me out of restraints.

Compl. at ¶ V. Plaintiff states that he is suing each defendant in their individual capacities for monetary damages. *Id.*

## II.  Standard of review for motion to dismiss

Defendants seek to dismiss plaintiff's complaint pursuant to Fed. Rules Civ. Proc. 12(b)(6). However, plaintiff has expanded the record by including an affidavit. Accordingly, the court will treat the motion as one for summary judgment pursuant to Rule 56. *See* Rule 12(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Discussion

#### A. Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Defendants contend that plaintiff's complaint should be dismissed for failure to exhaust available administrative remedies because his grievance, No. 164194, was not listed in a letter rejecting the plaintiff's grievances, thereby establishing exhaustion. Defendants' Brief at 7. Defendants' contention is without merit. The letter at issue, from Michigan Department of Corrections (MDOC) Manager of Prisoner Affairs James Armstrong, specifically refers to grievances "#164193 - #164195." *See* Armstrong Letter (Sept. 16, 2004) attached to Compl. Accordingly, defendants' motion to dismiss should be denied insofar as it seeks to dismiss plaintiff's complaint for lack of exhaustion.

#### B. Plaintiff's complaint should be dismissed for violating the court's injunction

Plaintiff is a frequent litigator in this court, having filed over 40 separate actions. Because of his abusive history of filing unmanageable complaints, reciting dozens of unrelated claims against as many as fifty defendants, the Chief Judge of this Court entered an injunction against plaintiff with respect to the filing of future complaints:

> IT IS FURTHER ORDERED that an injunction is issued as against plaintiff with regard to all future lawsuits filed in this court (or initially filed in the United States District Court for the Eastern District of Michigan and transferred to this court) requiring plaintiff,

>    upon pain of dismissal: (1) to utilize the court-approved form for
>    prisoner civil rights complaints and complete all sections of that
>    form; (2) limit any supplement to the complaint form to no more than
>    three single-sided sheets of paper containing legibly written factual
>    allegations; (3) to limit his complaint to claims arising out of a
>    common nucleus of fact; (4) to attach to his complaint only those
>    exhibits necessary to demonstrate exhaustion of the claims asserted
>    in the complaint against each named defendant and not exhibits
>    relating to the merits of the claim; and (5) to preclude plaintiff from
>    supplementing or amending his complaint in any future case without
>    having first obtained leave of court, with a brief in support of any
>    application for leave to amend showing that each proposed claim is
>    exhausted as to each defendant and detailing how the proposed
>    amendment arises out of the same nucleus of fact, why leave of court
>    should be granted to add claims and/or parties, and plaintiff must
>    attach to his brief a copy of the amended complaint.

*Reeves v. Smith*, No. 4:03-cv-50, slip op. at 3-4 (W. D. Mich. March 31, 2004). Since the issuance of the injunction in March 2004, plaintiff has filed several lawsuits that were in compliance with the Court's order.[2]

In the present case, plaintiff has violated the clear language of the injunction. Plaintiff's complaint raises several separate incidents that did not arise out of a common nucleus of fact. Plaintiff's complaint involves an incident on April 26, 2003, in which defendants Hogle and Parteet allegedly retaliated against plaintiff by placing him in restraints, shredding his legal documents and threatened his life. Plaintiff alleges that up to ten other "John Doe" defendants were present on that date to witness this activity. In the same complaint, plaintiff alleges that defendants Richardson, Lafler, Jensen, Wohlfert, Pettit, Simon Mahalic, Tkach and Cowley wrote "false

---

[2] *See, e.g., Reeves v. Sweet et al.*, No. 1:04-cv-605 (W.D. Mich.); *Reeves v. Gilman et al.*, No. 4:04-cv-108 (W.D. Mich.); *Reeves v. Datema et al.*, No. 5:04-cv-115 (W.D. Mich.); and *Reeves v. Bandt*, No. 1:04-cv-533 (W.D. Mich.).

retaliatory misconducts." Plaintiff alleges an additional vague claim against defendant Thomas for not taking him out of restraints. In all, plaintiff's complaint includes 22 defendants.

In support of his claim, plaintiff filed an "Affidavit in support of complaint" (docket no. 39). The court ordered this affidavit stricken because plaintiff included staff social security numbers in this public document. *See* Order (March 31, 2005) (docket no. 44). Plaintiff then filed another "Affidavit in support of complaint" which omitted the social security numbers (docket no. 46). In his second affidavit plaintiff identifies numerous unrelated claims against defendants, alleging that they wrote false misconduct reports on the following dates: Jensen (April 25th and 26th); Wohlfert (two separate occasions on April 26th); Hogle (April 26th); Pettit (April 26th and 27th); Tkach (April 26th); Simon (April 26th, 27th and 28th); Cowley (April 27th); Mahalic (April 27th); Richardson (April 28th); and Lafler (April 28th). Aff. at ¶¶ 10-11, 13-14, 17(a)-(k). These numerous incidents occurring between April 25th and April 28th did not arise from the same common nucleus of fact. *See* Major Misconduct Hearing Reports attached to Aff. Rather, the incidents occurred at different times, involved an assortment of corrections officers and were adjudicated in 17 separate misconduct hearings in May 2003. Plaintiff's allegation that these events were triggered by the retaliatory motives of various corrections officers is insufficient to demonstrate a common nucleus of fact. Accordingly, plaintiff's complaint is not in compliance with the court's March 31, 2004 order and should be dismissed.

### C.     Plaintiff's retaliation claim

In the alternative, plaintiff's complaint should be dismissed for failure to state a cause of action. Plaintiff alleges that defendants retaliated against him because he filed "lawsuits using staff social security numbers in [his] kites." Compl. at ¶ V. A prison inmate retains certain First

5

Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *See Pell v. Procunier*, 417 U.S. 817, 822 (1973). These retained First Amendment rights include the right to file grievances against prison officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith*, 250 F.3d at 1037. *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Plaintiff's claims fail because he was not engaged in activities protected by the Constitution or statute. In his affidavit, plaintiff states that as part of the major misconduct hearing process, he received an Internal Affairs investigation report containing the Social Security numbers and dates of birth of eight correctional facility staff members. Aff. at ¶ 3. Plaintiff states that "[b]ecause I used officers['] Social Security numbers and threats in my kites to health services, the defendants conspired to have me placed on food loaf and placed in restraints for 3 days." *Id.* at ¶ 12.

Plaintiff was found guilty of a major misconduct of threatening behavior for placing a note in a security cart "with officers [sic] names and social security numbers on it, stating Officer Hall and others were all dead bitches and your bitch asses who are not hard to find." Major Misconduct Hearing Report (May 9, 2003) attached to Aff. as Exh. D.[3] Plaintiff included an

---

[3] This was one of 17 major misconduct hearings involving plaintiff held on May 9, 2003. *See* Major Misconduct Hearing Report (May 9, 2003).

example of one of his kites, dated May 14, 2003, which states as follows:

> LIKE I SAID R.U.O. HALL SOCIAL SECURITY # ********* IS A DEAD BITCH AND FURTHERMORE RUO PAUL JENSEN SS# *********
> AARON VROMAN SS# *********
> STEVE BARBER SS# *********
> JENNIFER KULA SS# *********
> ARE ALSO DEAD ASS BITCHES [.] ALONG WITH YOUR BITCH ASSES YOU KNOW WHO I MEAN YOU ARE NOT HARD TO FIND.

Kite attached to Aff. as Exh. C.[4] (Social Security numbers deleted for purposes of this Report & Recommendation.)

Plaintiff's use of the officers' social security numbers was not "protected conduct" for purposes of a First Amendment retaliation claim. Social security numbers are unique numerical identifiers used to implement the federal tax system and to identify individuals participating in various government programs. *See Bower v. Roy*, 476 U.S. 693, 711 (1986); *Miller v. Commissioner of Internal Revenue*, 114 T.C. 511, 517 (2000). An individual has a substantial informational privacy interest in his or her social security number (sometimes referred to as "SSN"). *Sherman v. U.S. Department of the Army*, 244 F.3d 357, 365 (5th Cir. 2001). "[T]he concern is that the simultaneous disclosure of an individual's name and confidential SSN exposes that individual to a heightened risk of identity theft and other forms of fraud." *Id.* "[T]he harm that can be inflicted from the disclosure of a social security number to an unscrupulous individual is alarming and potentially financially ruinous." *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993). A social security number is synonomous with an individual's identity. It is no surprise that Congress has

---

[4] Although this kite bears the date May 14, 2003, plaintiff identifies it as the kite sent to health care on April 25, 2003. Amend. Aff. at ¶ 8.

7

made the false use of a social security number a felony. *See* 42 U.S.C. § 408(a)(7)(B) (an individual who "falsely represents a number to be a social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such a number is not the social security number assigned by the Commissioner of Social Security to him or such other person . . . shall be guilty of a felony.") .

In enacting the Privacy Act of 1974, the federal government recognized a privacy right in social security numbers and regulated the government's use of that information. *See* 5 U.S.C. § 552a. *See, e.g., Doe v. Chao*, 540 U.S. 614 (2004) (plaintiffs' suit based upon an improper disclosure of social security numbers by the Department of Labor violated § 552a). A person's social security number is protected as private, non-public information. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (enjoining the release of the personnel files containing the names, addresses and SSN's of police officers who had testified against members of a gang without providing prior notice to the officers); *Norwood v. FAA*, 993 F.2d 570, 575 (6th Cir. 1993) (determining that the redaction of an individual's SSN from FOIA documents is necessary to protect the identities of the individuals discussed in the documents). Indeed, this court specifically prohibits the listing of a social security number on pleadings. *See* W.D. Mich. LCivR 10.7(1) ("If an individual's social security number must be included in a pleading, only the last four digits of that number should be used").

The court is aware of no First Amendment right to obtain, use or disseminate another person's social security number in the matters shown here. On the contrary, in *Purdy v. Burlington Northern and Santa Fe Railway Company*, No. 0:98-cv-00833-DWF, 2000 WL 34251818 (D. Minn.), *aff'd* 21 Fed. Appx. 518 (8th Cir. 2001), the court enjoined the plaintiff from publishing on

his website the salaries and social security numbers of 800 railroad employees which were misdelivered to him in an e-mail. In issuing the injunction, the court rejected Purdy's First Amendment argument:

> When private rights are pitted against First Amendment rights, the Court is called upon to determine whether those private rights are sufficiently weighty to justify a prior restraint. Here, the Court concludes that those private rights are sufficiently weighty. The privacy right implicated here is not the right to some economic advantage or the right to avoid embarrassment; the right implicated here is the right of these employees to the very integrity of their identities. The Court cannot stress enough the harm to which these individuals will be exposed if this information is published.

*Purdy*, 2000 WL 34251818 at \*6. The court's reasoning in *Purdy* applies with equal vigor to the privacy rights at issue in this case.

Plaintiff has a First Amendment right to file written grievances and pursue lawsuits against MDOC staff. *Smith*, 250 F.3d at 1037; *Herron*, 203 F.3d at 415; *Noble*, 87 F.3d at 162. However, plaintiff does not have a constitutionally protected right to violate the privacy of MDOC staff by using or disseminating their social security numbers. The federal government regulates it own use of social security numbers. *See* 5 U.S.C. § 552a; *Doe*, 540 U.S. 614. To allow a prisoner to pursue a First Amendment retaliation claim in this court, in order to protect the prisoner's "constitutional right" to intimidate prison staff through the unauthorized use of the staff's own social security numbers, makes a mockery of the privacy right that all individuals possess in their social security numbers.

Finally, plaintiff threatened the corrections officers, stating that RUO Hall "is a dead ass bitch" and that the other officers "are also dead ass bitches." Plaintiff supported his threat with the prominent display of the officers' social security numbers and the admonition that "they are not hard to find." Plaintiff's threats were not protected speech under the First Amendment. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("threats of violence are outside the First Amendment").

Plaintiff has failed to establish that he engaged in activities protected by the Constitution or statute when he used MDOC staff social security numbers in his kites. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Accordingly, his retaliation claim fails.

### III.  RECOMMENDATION

Accordingly, I respectfully recommend that defendants' motions to dismiss (docket nos. 26, 48) be **GRANTED** and that plaintiff's complaint be **DISMISSED**.


Dated: January 17, 2006            /s/ Hugh W. Brenneman, Jr.
                                   Hugh W. Brenneman, Jr.
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).